IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

RYAN BONNEAU,

              Plaintiff,      6:10-cv-1184-TC

        v.                 FINDINGS AND
                            RECOMMENDATION

DANIEL STATON, et al.

              Defendants.

COFFIN, Magistrate Judge.

Plaintiff, an inmate at FCI Sheridan, filed a 55 page, handwritten, pro se complaint alleging violations of his constitutional rights while he was incarcerated in the Multnomah County Jail. The complaint alleges 24 constitutional claims regarding medical care. Plaintiff's primary claim is that doctors and medical health personnel refused to provide him with the same prescription medications that his private doctors had prescribed. Several of

1 - FINDINGS AND RECOMMENDATION

plaintiff's claims are based on an incident in which a "Mike and Ike" candy allegedly became "lodged in plaintiff''s trachea," and jail staff's alleged response or lack of response to this situation. Complaint (#2) p. 40.

Plaintiff also alleges seven supplemental state law claims for medical malpractice, harassment, assault, battery, intentional infliction of emotional distress, negligent infliction of emotional harm and negligence. The state law claims are based on the same factual allegations that form the basis for plaintiff constitutional claims. All of plaintiff's claims concern either the alleged action or inaction of Multnomah County Employees or the policies, procedures and practices of Multnomah County during the time plaintiff was incarcerated in the Multnomah County Jail between December 2009 and August 2010. Before the court are the parties cross motions for summary judgment (#64) and (#81).

The general facts giving rise to plaintiff's claims are summarized in defendant's Memorandum in Support (#65) at pp. 2-10 and need not be repeated here. Specific facts relative to the individual claims will be set forth as appropriate in the discussion below.

As a preliminary matter, defendants argue that plaintiff's claims should be denied because he did not exhaust administrative remedies with respect to his claims as required

by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a).

The Prison Litigation Reform Act (PLRA),   42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal Law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." See, Woodford v. Ngo, 548 U.S. 81 (2006); Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003).   Porter v. Nussle, 532 U.S. 731 (2001); Booth v. Churner, 532 U.S. 731 (2001); Bennett v. King, 293 F.3d 1096, 1098 (9th Cir. 2002). If the district court concludes that  the prisoner has not exhausted non-judicial remedies, the proper remedy is dismissal of the claim without prejudice.  Waytt v. Terhune, supra.

It is undisputed that Multnomah County Detention Center ("MCDC") has a grievance policy and that plaintiff did not file any grievances concerning the claims in this action. However, I find it is appropriate to address plaintiff's claims on the merits rather than to dismiss them without prejudice.

Defendants also argue that "[p]laintiff's claims 1 - 23 fail because, under the PLRA, Plaintiff cannot recover for mental or emotional injury without a prior showing of physical injury."  Memorandum in Support (#65), p. 26.

Defendants' argument in this regard may be well taken as

3 - FINDINGS AND RECOMMENDATION

to some of plaintiff's claims.  However, the record arguably
presents an issue of fact as to whether plaintiff sustained a
physical injury as a result of defendants' alleged conduct or
policies.    Accordingly,  I  find  that  it  is  appropriate  to
decide the motions before the court on the arguments discussed
below rather than the Prison Litigation Reform Act physical
injury requirement.

    In  order  to  prevail  on  a  42  U.S.C.  §  1983  claim  that
medical treatment has been denied or inadequately rendered, a
prisoner  must  establish  that  there  has  been  a  "deliberate
indifference  to  [his]  serious  medical  needs."    Estell  v.
Gamble,  429  U.S.  97,  104  (1976);  Lopez  v.  Smith,  203  F.3d
1122,  1131  (9th  Cir.  2000);  see also,  Clements  v.  Gomez,  298
F.3d 898, 904 (9th Cir. 2002).

    A  determination  of  "deliberate  indifference"  requires  an
examination  of  two  elements:  1.)  The  seriousness  of  the
prisoner's  medical  needs,  and  2.)  The  nature  of  the
defendant's response.  McGuckin v. Smith, 974 F.2d 1050, 1059-
60  (9th  Cir.  1992)  (overruled  on  other  grounds  by  WMX  Techs.,
Inc  v.  Miller,  104  F.3d  1133  (9th  Cir.  1997).  To  find
deliberate  indifference,  "[a]  defendant  must  purposefully
ignore  or  fail  to  respond  to  a  petitioner's  pain  or  possible
medical need."  Id. at1060.

    Whether a medical condition is serious is ordinarily a

question left to physicians, <u>Brownell v. Figel</u>, 950 F.2d 1285, 1291 (7th Cir. 1991) <u>Davis v. Jones</u>, 936 F.2d 971, 992 (7th Cir. 1991), but in general a medical condition is serious if it is life threatening or poses a risk of needless pain or lingering disability if not treated at once. <u>Id</u>., 936 F.2d at 972; <u>see also</u>, <u>Farmer v. Brennan</u>, 511 U.S. 825, 847 (1994).

Medical malpractice, even gross malpractice, does not amount to a violation of the Eighth Amendment, <u>see</u>, <u>Broughton v. Cutter Laboratories</u>, 622 F.2d 458, 460 (9th Cir. 1980). Thus, a dispute between a prisoner and prison officials over the necessity for or extent of medical treatment does not raise a claim under 42 U.S.C. § 1983. <u>Toguchi v. Chung</u>, 391 F.3d 1051, 1058 (9th Cir. 2004). "Rather, to prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the chosen course of treatment 'was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk to [the prisoner's] health.'" <u>Id</u>, (quoting <u>Jackson v. McIntosh</u>, 90 F.3d 330, 332 (9th Cir. 1996.

Because courts lack medical expertise, "where prisoners receive some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgment." <u>Miranda v. Munoz</u>, 770 F.2d 255, 259 (1st Cir. 1985); <u>Layne v. Vinzant</u>, 657 F.2d

468, 474 (1st Cir. 1985); Toguchi v. Chung, supra at 1058.

Liability may be imposed only where the decision by the medical professional is so objectively unreasonable as to demonstrate that it was not based on professional judgment. Parham v. J.R., 442 U.S. 584,(1976); Estate of Conners v. O'Conner, 846 F.2d 1205, 1209 (9th Cir. 1988), cert. Denied, 489 U.S. 1065 (1989).

The requirements for mental health care are the same for those for physical health needs. Doty v. County of Lassen, 37 F.3d 540, 546 (9th Cir. 1984).

Plaintiff's claims in Counts 1 - 4  are based on MCDC booking procedures and specifically the  policy that restricts health   services   physicians   for   prescribing   opiates, amphetamines and benzodiazepines to jail inmates. The gist of plaintiff's claims is that because these medications were prescribed by his private physician, defendants were obliged to provide him with them and violated his rights by not doing so.

Plaintiff alleges that booking procedure and drug prescription policy resulted in the "denial, delay, and/or intentional interference with medical treatment, constituting a deliberate indifference to plaintiff's serious medical needs and/or resulting in the unnecessary and wanton infliction of pain." Complaint (#2) p. 29. Plaintiff has not alleged any

6 - FINDINGS AND RECOMMENDATION

specific injury resulting from the booking procedure's "reactive approach" or the drug prescription policies complained of in Counts 1 - 4.

Defendant Gayle Burrows is the Director for Multnomah County Health Services. Her Declaration describes the booking procedures and related drug prescription polices as follows:

4.    Multnomah County Corrections Health has in place a policy that requires that all inmates are screened for medical, dental and mental health concerns at booking.    (Exhibit 12, p. 1,2, Receiving and Screening Policy).  Pursuant to that policy, if an inmate has  current medications when he comes into custody, then the nurse asks the inmate to asign a release of information which is then faxed to the pharmacy that filled the prescription, to verify the prescriptions.

5.    My review of Plaintiff's medical records show that plaintiff had current prescriptions for Vicodin, Desoxyn, Albuterol, and Xanax when he booked into the Multnomah County jail.

6.    If an inmate is taking a prescription for a potentially life threatening condition, e.g., nitroglycerine tablets for a heart condition, the nurse doing the intake assessment will contact the on-call doctor who can then order the appropriate medicine.    The intake nurse will also make a referral to the mental health providers in the jail for inmates who have symptoms indicating a need to see a mental health provider or the inmate asks/requests to see a mental health professional.

7.    Plaintiff'S Multnomah County intake medical records show that plaintiff's Albuterol was ordered for his asthma and the nurse made a referral to mental health.    (Exhibit 9).

8. Pursuant to Multnomah County Corrections Health policies and practices, inmates generally do not receive medications listed as for opiates, amphetamines or benzodiazepines, although opiates

7 - FINDINGS AND RECOMMENDATION

could be prescribed on an emergency basis, e.g.
after surgery.    This is standard practice for
correctional institutions and is based on the fact
that these medications can result in abuse, being
cheeked and used for "currency" with other inmates
or being cheeked and collect[ed] as a method for
suicide.

9.       Although    opiates,    amphetamines,    and
benzodiazepines are not generally prescribed for
inmates in Multnomah County jails, other types of
drugs are prescribed to address an inmate's medical
conditions, e.g. pain and anxiety.

Declaration of Gayle Burrows (#66) p. 2-3.

The    Burrows    declaration    further    establishes    that
defendants followed the Multnomah County Corrections Health
policies described above. Although plaintiff was not provided
with prescriptions for Desoxyn, Xanax or Vicodin, he was
prescribed other appropriate medications for his medical
conditions and stated mental health issues.   Id. p. 3-4.

Plaintiff has failed to establish a material issue of
fact as to whether the booking procedure and drug prescription
policies described above resulted were not followed during his
booking or that the policies resulted in any life threatening
medical condition or a risk of needless pain or suffering to
plaintiff.    The Corrections Health policies are based on
objectively reasonable  medical expertise[1] that this court is
unwilling to "second guess," Mirnda v. Munoz, supra at 259,

---

[1]All Multnomah County Corrections Health Services policies and
procedures are approved by the Health Department Medical Director
who is a physician.   Burrows Declaration (#66) p. 2.

and do not establish or reflect a deliberate indifference to plaintiff's serious medical needs.  Defendants are entitled to judgment as a matter of law as to plaintiff's claims in Counts 1-4.

In Count 5, plaintiff alleges that because of the policy restricting dispensing stimulants and opiates he was forced to go through withdrawal from Desoxyn, Hydrocodone and Xanax (benzodiazepine) "cold turkey, without any assistance or monitoring from defendants." Complaint (#2) p. 34.  Plaintiff describes his withdrawal symptoms as follows: "Plaintiff became extremely nauseated and threw up for several days ... Plaintiff experienced severe headaches, night sweats, vomiting and extremely severe panic attacks." Complaint (#2), p. 8.

The record reflects that Multnomah County has protocols that are used when an inmate is withdrawing from addictive drugs.  Burrows Declaration (#66), p. 4; and Exhibit 12, p. 1-2.  Plaintiff had a prescription for Xanax, a benzodiazepine, when he entered MCDC.     Exhibit 9.     The Benzodiazepine withdrawal protocol requires that if there is a current prescription the prescription can be continued or tapered off. Exhibit 12, p. 1.  Defendant Parker ordered a four day supply of Clonazepam, another benzodiazepine to enable plaintiff to taper off of Xanax.  Burrow's Declaration (#66) and Exhibits 11, p. 1.    Exhibit 13, p. 2, shows that plaintiff took

9 - FINDINGS AND RECOMMENDATION

Clonazepam from December 13, 2009 through December 16, 2009.

Multnomah County also has a protocol for withdrawing from opiates like heroin or Vicodin. Exhibit 12, p. 2. Defendant Parker ordered Hydroxyzine for plaintiff's use during opiate withdrawal pursuant to the MCDC protocol on opiate withdrawal. Burrow's Declaration (#66) p. 5. Medication records show that plaintiff took Hyroxyzine from December 9, 2010 through December 26, 2010. Exhibit 13, p. 1,2,6.

Corrections Health records do not indicate that plaintiff requested any medical assistance with his withdrawal symptoms or even mentioned withdrawal to any Corrections Health personnel who saw him during his first month of incarceration. Although plaintiff may have experienced some discomfort from withdrawal symptoms related to drug dependency, there is no material issue of fact that defendants provided plaintiff with appropriate treatment for withdrawal and were not deliberately indifferent to his serious medical needs.

In Count 6 plaintiff alleges that "[d]efendants repeatedly denied plaintiff pain medication for his back between December 2009 and August 2010." Complaint (#2) p. 34.

To the extent that plaintiff's claim in Count 6 is based on the fact that he was not prescribed Hydrocodon pursuant to MCDC policy, that claims is addressed above.

Otherwise, Count 6 fails as a factual matter. X-rays

ordered by Dr. Marks showed an "unremarkable limited thoracic spine series. No suggestion of compression fracture or malalignment, or associated soft tissue abnormality." Exhibit 16. Plaintiff stated in his deposition that he could not sleep at night because of his back pain but that it did not limit daily activities such as dressing, showering and going to meals. Exhibit 14, p. 30-31. Plaintiff acknowledged that he received Motrin, Naprosen and Ibuprofen. Plaintiff's treatment for his back pain was consistent with the Multnomah County Health Department protocol for back and neck pain. Exhibit 12, p. 15.

Based on the foregoing, I find that defendants provided constitutionally adequate medical care for plaintiff's complaints of back pain and that plaintiff has failed to establish that defendants were deliberately indifferent to a serious medical need.

In Count 7 plaintiff alleges that he has a "history of anxiety" and was "repeatedly denied any benzodiazepines except a few days worth of klonopin." Complaint (#2) p. 35. Plaintiff further alleges that "without this medication, plaintiff suffered numerous anxiety and panic attacks between December 2009 and August 2010." Complaint (#2) p. 35.

The Declaration of Gayle Burrows indicates that benzodiazepines are not generally prescribed for inmates in

11 - FINDINGS AND RECOMMENDATION

Multnomah County jails but that other drugs are prescribed to address inmates' anxiety issues. Burrows Declaration (#66) p. 3. Plaintiff's medical records indicate that plaintiff was prescribed other drugs for his stated mental health problems, including Devalproex, Valproic Acid, Buproprion, Hydroxyzine, Trazadone, and Doxepin.[2]  Id., p. 4, and Exhibits 11 and 13.

As noted above, a dispute between a prisoner and prison officials over the necessity for or extent of medical treatment does not raise a claim under 42 U.S.C. § 1983. Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004);, Shields v. Kunkle, 442 F.2d 409, 410 (9th Cir. 1971); Mayfield v. Craven, 433 F.2d 873 (9th Cir. 1970); McKinney v. People of the State of California, 427 F.2d 160 (9th Cir. 1970) (per curiam) and the cases collected in the Annotation, Relief Under Federal Civil Rights Act to State Prisoner Complaining of Denial of Medical Care, 28 A.L.R. Fed. 179, 366-379 (1976).

There is no material issue of fact in the record before the court that throughout his incarceration, Corrections Health personnel prescribed a variety of drugs to help plaintiff with his mental health issues. Although plaintiff may disagree with his health providers choices regarding the

---

[2]Devalproex and Valproic Acid (also known as Depakote) are both prescribed to treat bipolar patients and to prevent migraine headaches; Buproprion is prescribed to ADD and ADHA; Hydroxyzine is prescribed to control nausea and vomiting and to treat anxiety; Trazadone and Doxepin are both prescribed to treat depression and anxiety.

drugs he was prescribed, his opinion does not create an issue of fact as to the constitutional adequacy of his medical care or demonstrate a   deliberate indifference to his serious medical need.

In Count 8 plaintiff alleges that defendants denied him Cafergot to treat his migraine headaches for approximately 5 months.   In Count 9 plaintiff alleges that when defendant Marks prescribed Cafergot the amount was inadequate to meet his needs.   Complaint (#2) p. 36-37.

The record reflects that On April 2, 2010, plaintiff sent Multnomah County Corrections Health a medical request form stating that he had "recently been having migraine headaches" and requesting Cafergot to treat them. Exhibit 18.   Cafergot is a stimulant and is not regularly prescribed as a first medication for headaches.   Burrows Declaration (#66). P. 4.; and Exhibit 12. On May 7, 2010,   Dr. Marks prescribed six Cafergot a week for plaintiff's headaches.   Id; and Exhibit 13. Plaintiff continued to receive Cafergot and Divalproex, or a similar drug like Valproic Acid throughout the rest of his incarceration in MCDC.   Burrows Declaration (#66) p. 4.   Even before plaintiff was prescribed Cafergot, he was prescribed Devalproex, a drug that is prescribed to treat headaches. Burrows Declaration (#66) p. 4 and Exhibit 13, pp. 5, 10, 11, 12, 14, 19 and 20.

13 - FINDINGS AND RECOMMENDATION

In this case there is no material dispute of fact that plaintiff was prescribed medication for his migraine headaches. Although plaintiff may disagree with Dr. Mark's decisions as to the type and amount of medication to prescribe, his opinion does not give rise to a claim under the Eighth Amendment. See, Miranda v. Munoz, supra.

In Count 10 plaintiff alleges that "[d]efendants have an unconstitutional custom or policy to wit - When an inmate starts to get low on medication and has no refills the medical department and defendants take no action to review client files or run a report of who is getting low on meds." Complaint (#2) p. 38. Plaintiff further alleges that the alleged policy of allowing inmates' prescriptions to expire and then requiring the inmate to re-request the medications on a medical request form "allows a gap in which inmates have no medication." Complaint (#2) p. 38. Plaintiff alleges that as a result of this policy he was "without medications several times including a 10 day period during which he was without Cafergot." Id.

It is not deliberate indifference or otherwise unconstitutional to require inmates to request their health provider to renew their prescriptions. In addition, the only specific injury plaintiff alleges is that he was without Cafergot for a 10 day period. That claim is discussed above

and should be denied for the reason previously set forth, specifically that plaintiff was provided with other appropriate medication for his headaches.

In Count 11, plaintiff alleges that defendant Ersson mis-ordered a prescription re-fill for Cafergot and because of "the strange way the prescription was written, plaintiff would run out of Cafergot." Complaint (#2, p. 39.

In his deposition, plaintiff acknowledged that his only claim against Dr. Errson is that he refilled a prescription originally prescribed by Dr. Marks. Exhibit 14, p. 84. Defendant Errson never saw plaintiff as a patient. Id.

Assuming that defendant Errson's conduct was negligent or constituted medical malpractice [and there is no evidence in the record to support such a conclusion], negligence or medical malpractice do not state a claim under the Eighth Amendment. See, Broughten v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980). Plaintiff has not presented any evidence that Dr. Errson was deliberately indifferent to plaintiff's serious medical need.

In Counts 12 plaintiff alleges that an un-named nurse was deliberately indifferent to his serious medical need regarding the "Mike & Ike" incident. In Count 13, plaintiff alleges that an un-named deputy's response to the incident was insufficient. These allegations against unidentified

15 - FINDINGS AND RECOMMENDATION

individuals fail to state a claim against any named defendant.

Moreover, the record reflects that after requesting medical assistance regarding the candy allegedly stuck in his throat, plaintiff was seen by a "med tech" within one half hour and was subsequently examined twice by a nurse. Plaintiff's medical chart notes indicate that he was "anxious" but was not having difficulty breathing and the nurse did not find any obstruction when she palpated.    Burrows Declaration (#66) p. 7-8, and Exhibit 19. In his deposition plaintiff characterized the situation as "annoying." Exhibit 14, p. 180. Plaintiff's only injuries were an irritated throat for "at most 5 days" and distress.  Id. p. 147.

I find that plaintiff has failed to establish either that that the unnamed individuals responding to the "Mike and Ike" incident were deliberately indifferent or that he had a serious medical need.   To the extent that Counts 12 and 13 seek to allege claims based on a MCDC policy, plaintiff's policy claims are addressed below.

Count 14 alleges that an unnamed nurse showed deliberate indifference to his medical needs by "denying and delaying, and intentionally interfering with [his] medical treatment." Complaint (#2) p. 42-43. This Count fails to state a claim against any named defendant.   To the extent plaintiff's allegations in Count 14 concern County Health policies,

16 - FINDINGS AND RECOMMENDATION

plaintiff's policies claims are addressed above.  Defendants
are entitled to judgment as a matter of law as to Count 14.

Count 15 is based on "[t]he same concept as in Count 14,"
Complaint (#2) p. 42, and fails for the same reasons as set
forth above as to Count 14.  Specifically, Count 15 fails to
allege facts against a named defendant and arguably challenges
County Health polices addressed elsewhere in this Findings and
Recommendation.  In addition, Count 15 is based on the "Mike
and Ike incident" and is redundant of Counts 12 and 13.
Defendants are entitled to judgment as a matter of law as to
Count 15.

In Count 16 plaintiff alleges that defendants Marks,
Bane, Parker, "Lisa (LNU), and Steve (LNU)" ... "were all
aware of the fact that plaintiff had not received the
medications plaintiff arrived taking when he was booked into
MCDC ... and blatently (sic) ignored the Plaintiff's need for
lawfully prescribed medications."  Complaint (#2) p. 43.[3]

The defendants named in Count 16 are entitled to judgment
as a matter of law as to Count 16 for the same reasons
discussed  above.  Specifically,  plaintiff  has  failed  to

---

[3]"Lisa (LNU) (last name unknown" is identified in plaintiff's
complaint as a nurse practitioner who "has occasionally been a
provider to plaintiff at MCDC." Complaint (#2) p. 5. "Steve (LNU)"
is identified as a Mental Health Consultant who works at MCDC. *Id.*,
p. 6.  Neither "Lisa" or "Steve" were served and neither waived
service.   Therefore these individuals are not defendants properly
before the court.

establish that these defendants' conduct in following the policy restricting the dispensation of opiates, amphetamines, and benzodiazepine to jail inmates (even if prescribed by private physicians) constituted a deliberate indifference to his serious medical need.

In Counts 17 and 18 plaintiff re-alleges and incorporates by reference his entire prior pleading but does not allege any additional specific facts that would constitute an additional or independent claim against any named defendant. I find that Counts 17 and 18 fail to state a claim and defendants are entitled to judgment as a matter of law as to those counts.

In Count 19 plaintiff alleges that "by crushing plaintiff's Wellbutrin defendants were deliberately indifferent to plaintiff serious medical needs" in violation of his Eighth and Fourteenth Amendment rights.

The Burrows Declaration establishes that the Multnomah County Corrections Health has a protocol for crushing controlled substances. Exhibit 12, p. 13. The crushed medicine policy is intended to protect inmates from themselves and others. Burrows Declaration (#66), p. 6.

The only harm plaintiff alleges as a result of the crushed medicine policy is a sore throat and "having to taste the raw composition of a prescription medication." Complaint

(#2) p. 46. This alleged "harm" does not constitute a serious medical need.

Plaintiff has failed to allege how the policy violated his Fourteenth Amendment due process rights or establish that similarly situated inmates were not subject to the same policy. Therefore plaintiff's Fourteenth Amendment claim fails as a factual and legal matter and defendants are entitled to judgment as a matter of law as to Count 19.

In Count 20, plaintiff alleges that defendants refusal to provide him with "a stimulant for ADD ... as other similarly situated inmates are" violated plaintiff's Eighth and Fourteenth Amendment rights.

Defendants are entitled to judgment as a matter of law as to plaintiff's Eighth Amendment claim to entitlement to amphetamines for the reasons discussed above.

Plaintiff's equal protection claim is apparently based on the fact that some juveniles in Multnomah County's juvenile detention facility are at times prescribed amphetamines for ADD or ADHD. See, Complaint (#2) p. 13.

The Burrow Declaration establishes that the psychiatric care of juveniles in Multnomah County is performed by an independent contractor and is independent of MCDC, and that Ms. Burrows has not authority over the prescription of medications to such juveniles. Accordingly, the individuals

19 - FINDINGS AND RECOMMENDATION

referenced in plaintiff's complaint are not "similarly situated inmates" as alleged and defendants are entitled to judgment as a matter of law as to the equal protection claim.

Plaintiff has not alleged any factual basis or presented any argument in support of his "due process" claim based on defendants' refusal to provide him with amphetamine and I find that it fails as a matter of law.

In Count 21 plaintiff alleges that defendants Speer and Mueller denied plaintiff access to his medical files "in violation of Plaintiff's liberty interests protected by the Fourteenth amendment." Complaint (#2) p. 47.

Defendants acknowledge that they refused plaintiff's request for a copy of his medical files. Pursuant to Correction Health policy inmates may request their medical records, but cannot receive copies of their medical records until they are out of custody and pay appropriate fees. Burrow Declaration (#66) p. 7. This policy was adopted because in the past when inmates have been in possession of their medical records they use the records to confront medical staff concerning what they have recorded in the medical chart. Id.

Plaintiff has not identified any statute or ordinance that creates a constitutional "liberty interest" entitling inmates to possession of their medical files while incarcerated. Assuming that plaintiff could identify some

constitutional basis for his claim in Count 21, I find that
the policy prohibiting in-custody inmates from obtaining
copies of their medical records facilitates order in the jail
and protects medical personnel. Thus, any slight impingement
of plaintiff's constitutional rights as a result of the policy
is justified by the policy's rational connection to a
legitimate penological purpose.   Turner v. Safley, 482 U.S.
84, 88-90 (1987).

In Count 22 plaintiff alleges that defendant Stanton is
liable because he is "the final policymaker with respect to
the internal procedures at MCDC." Complaint (#2) p. 48.[4]

Plaintiff alleges that the MCDC policies of having fewer
deputies work on graveyard shift, its alleged practice of
allowing deputies to "screen" medical emergencies, its failure
to have a policy requiring deputies to "directly observe" any
inmate who reports a medical problem until "arrangement [can]
be made for transport to the emergency room and/or EMTs," and
its allegedly inadequate training of corrections deputies,
violate his 8th and 14th Amendment rights.   Id. p. 48-50.

In order to prove that MCDC's policies violated his
constitutional rights, plaintiff must establish that by

---

[4]     Plaintiff acknowledged in his deposition that defendant
Stanton was in no way personally involved in any of the allegedly
unconstitutional conduct or inactions alleged in his complaint.
Dunaway Declaration   (#68), Exhibit 14, pp. 20-21, 137, 156.

enacting the alleged policies challenged by plaintiff or failing to enact the procedures proposed by plaintiff, defendant Stanton caused his employees to violate plaintiff's constitutional rights by acting with deliberate indifference to plaintiff's serious medical needs. Gibson v. County of Washoe, Nev., 290 F.3d 1175 (9th Cir. 2002).

To prove deliberate indifference, plaintiff must establish that defendant Stanton was on actual or constructive notice that his failing to enact adequate medical protocols would likely result in a constitutional violation. Farmer v. Brennan, 511 U.S. 825, 841 (1994). Under the Eighth Amendment standard of deliberate indifference a person is liable for denying a prisoner needed medical care only if the person "knows of and disregards an excessive risk to inmate health and safety." Id., 511 U.S. at 837.

A review of the MSDC polices and procedures indicate that the jail is staffed at a reduced level during the night. However, there is a deputy, either in the module or at floor control monitoring the welfare of inmates and prepared to act if there is a medical emergency. Exhibit (#67) Powers Declaration, exhibits 1 and 2. These polices do not establish deliberate indifference to a known risk of harm.

Plaintiff's allegation that corrections deputies make medical decisions is controverted by the MCSO Corrections

Division policy and procedure on the provision of medical procedure in the jail which require deputies to call "medical back-up" when responding to medical emergencies. Powers Declaration (#67) Exhibit 1, p. 4. It is undisputed that plaintiff was almost immediately examined by a "med tech" and a nurse after requesting medical assistance at the time of the "Mike & Ike" incident. Plaintiff has failed to present any evidence to establish that corrections deputies make "medical decisions."

Plaintiff claims that corrections officers should have "directly observed" him until he was transported to the hospital by EMS. However, based on the record before the court there is nothing to establish that the medical need was such that would require plaintiff being transported to the hospital. Under these circumstances, the failure to have a "direct observation" policy does not demonstrate a deliberate indifference to a serious medical need or a known risk of harm.

Plaintiff's claim that MCDC corrections deputies are incompetent and unqualified to determine if an inmate should be seen by medical staff can be construed as a "failure to train" claim. As such, it fails to state a claim and is controverted by the record, specifically Exhibit (#66), the Declaration of Gayle Burrows (#66); the Declaration of James

Powers (#67) and the exhibits referenced therein.  Moreover, plaintiff has failed to establish that the MDCD training with regard to medical conditions (or otherwise) represents a pattern of constitutional violations by untrained employees that demonstrates deliberate indifference.  <u>Connick v. Thompson</u>, 131 S.Ct. 1350, 2011 U.S. LEXIS 2594 (2011).

In Count 23 plaintiff seeks to hold defendant Burrows liable for various polices alleged to have violated plaintiff's constitutional rights.  Complaint (#2) p. 50-51.

Defendant Burrows is the final policy maker for Corrections Health.  In order for her to be liable to plaintiff he must prove that Correction Health policies were deliberately indifferent to a known risk of harm to plaintiff and  resulted in a violation of plaintiff's constitutional rights.  For the reasons discussed above, none of the defendants' conduct which was taken pursuant to the polices, customs or practices described in Count 23 violated plaintiff's constitutional rights.  Therefore defendant Burrows is entitled to judgment as a matter of law as to Count 23.

Plaintiff alleges in Count 24 that "[d]efendants do not have a medical grievance policy in place" which violated plaintiff's rights under the "1st, 8th and 14th Amendments." Complaint (#2) p. 53.

The Declaration of James Powers establishes that MCSO has
a grievance policy.     Powers Declaration (#67) p. 4, and
Exhibit 3.     Moreover, Corrections Health a has a specific
grievance procedure for complaints about medical care.
Dunaway Declaration (#68), Exhibit 12, p. 16-17.     Inmates
are advised of the grievance procedure through the Inmate
Manual, which is available in every Module.     Powers
Declaration (#67), p. 4. The alleged fact that a deputy may
have told plaintiff hat he could not grieve medical issues is
irrelevant to plaintiff's claim that there is no medical
grievance policy in place.

Plaintiff has failed to establish a material issue of
fact regarding the claim that defendants do no have a "medical
grievance policy in place" and it fails as a factual matter.
Defendants are entitled to judgment as a matter of law as to
Count 24.

In Count 25, plaintiff re-alleges and incorporates by
reference his entire prior pleading and alleges that "[t]he
defendants are liable to plaintiff for the following claims
under the laws of the state of Oregon: a. medical malpractice,
b. harassment, c. assault, d. battery, e. intentional
infliction of emotional distress, f. negligent infliction of
emotional distress, g. negligence." Complaint (#2) p. 54.
Plaintiff has made no attempt to correlate the facts alleged

in paragraphs 21 - 104 to any of these ancillary state law
claims or identify which specific defendant or defendants he
seeks to hold liable for each alleged tort.

Pursuant to Fed. R. Civ. P. 8(a), a complaint shall
include "(1) a short and plain statement of the grounds upon
which the court's jurisdiction depends ..., (2) a short and
plain statement of the claim showing that the pleader is
entitled to relief; and (3) a demand for judgment for the
relief the pleader seeks." "Each averment of a pleading shall
be simple, concise and direct." Fed. R. Civ. P. 8(e).

A district court has the power to dismiss a complaint
when a plaintiff fails to comply with Federal Rules of Civil
Procedure 8(a) and 8(e). McHenry v. Renne, 84 F.3d 1172, 1179
(9th Cir. 1996); Nevijel v. North Coast Life Ins. Co., 651 F.2d
671, 673 (9th Cir. 1981).

If the factual elements of a cause of action are
scattered throughout the complaint but are not organized into
a "short and plain statement of the claim," dismissal for
failure to satisfy Rule 8(a) is proper. Sparling v. Hoffman
Constr. Co., 864 F.2d 635, 640 (9th Cir. 1988); see also,
Nevijel v. North Coast Life Ins. Co., 651 F.2d 671, 674 (9th
Cir. 1981).

In order to state a claim against a named defendant,
plaintiff must allege specific facts about that defendant and

identify how that defendant's conduct violated his rights.

General allegations are insufficient.

> The Supreme Court recently noted:
>
> > As the court held in <u>Twombly</u>,[5] 550 U.S. 544, 127
> > S.Ct. 1955, 167 L.Ed2d 929, the pleading standard
> > Rule 8 announces does not require "detailed factual
> > allegations," but it demands more than an
> > unadorned, the-defendant-unlawfully-harmed-me
> > accusation. <u>Id</u>., at 555, 127 S.Ct. 1955 (citing
> > <u>Papasan v. Allain</u>, 478 U.S. 265, 286, 106 S.Ct.
> > 2932, 92 L.Ed.2d 209 (1986)). A pleading that
> > offers "labels and conclusions" or "a formulaic
> > recitation of the elements of a cause of action
> > will not do." 550 U.S., at 555, 127 S.Ct. 1955.
> > Nor does a complaint suffice if it tenders "naked
> > assertion[s] devoid of "further factual
> > enhancement." <u>Id</u>., at 557, 127 S.Ct. 1955.

<u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937, 1949 (2009).

Although pro se complaints are to be interpreted liberally, <u>Haines v. Kerner</u>, 92 S.Ct. 594 (1972), the court may not supply essential elements that are not pleaded. <u>Ivey v. Board of Regents</u>, 673 F.2d 266 (9th Cir. 1982).

I find that the claims alleged in Count 25 do not meet the minimal pleading requirements of the federal rules. Plaintiff's complaint is a rambling narrative of detailed factual averments followed a general assertion the defendants' alleged conduct constituted torts under the laws of the state of Oregon. Accordingly the ancillary claims alleged in Count 25 should be dismissed for failure to state a claim.

---

[5]<u>Bell Alantic Corp. v. Twombly</u>, 550 U.S. 544, 127 S.Ct. 1955 (2007).

27 - FINDINGS AND RECOMMENDATION

Assuming that the pleading deficiency could be cured by amendment I find that this court should refrain from exercising federal jurisdiction over those claims.

If the federal claim giving rise to the court's jurisdiction is dismissed before trial, supplemental state law claims may be dismissed as well. 28 U.S.C. § 1367(c)(3). Some cases hold that the proper exercise of discretion *requires* dismissal of state law claims unless "extraordinary circumstances" justify their retention. Wren v. Sletten Const. Co., 654 F.2d 529, 536 (9th Cir. 1991); Wentzka v. Gellman, 991 F.2d 423, 425 (7th Cir. 1993). However, most courts hold that whether to dismiss supplemental claims is fully discretionary with the district court. Schneider v. TRW, Inc., 938 F.2d 986, 993-994 (9th Cir. 1991), weighing factors such as economy, convenience, fairness and comity. Brady v. Brown, 51 F.3d 810 (9th Cir. 1995).

I find that there are no extraordinary circumstances to justify this court's continuing to exercise jurisdiction over plaintiff's state law claims, and that the factors of economy, convenience, fairness and comity weigh in favor of dismissal.

Based on all of the foregoing, I find that there are no genuine issues of material fact remaining in this case and that defendants are entitled to judgment as a matter of law as to plaintiff's constitutional claims. I further find that the

28 - FINDINGS AND RECOMMENDATION

supplemental state law claims alleged in Count 25 fail to meet
the minimal pleading requirements of the federal rules and
should be dismissed for failure to state a claim and that this
court should decline to allow amendment or continue to
exercise jurisdiction over the state law claims.

Defendants' Motion for Summary Judgment (#64) should be
allowed. Plaintiff's Motion for Summary Judgment (#81) should
be denied. Plaintiff's Motion to Strike Reply (#139) should
be denied. This action should be dismissed with prejudice.

I further find that although the allegations of
plaintiff's complaint may have stated one or more claims for
pleading purposes and that defendants therefore appropriately
responded to plaintiff's complaint on the merits, ie. by way
of a motion for summary judgment, the factual basis for
plaintiff's claims was either non-existent or frivolous.
Accordingly, the order and judgment of dismissal in this
action should be deemed a "strike" for purposes of the PLRA
"three strike rule."[6]

In addition, any appeal from an order adopting this

---

[6]A prisoner is prohibited from proceeding in a civil action
without full prepayment of filing fees if the prisoner has, on
three or more prior occasions, while incarcerated or detained in
any facility, brought an action in a court of the United States
that was dismissed on the grounds that it was frivolous, malicious,
or failed to state a claim upon which relief may be granted, unless
the prisoner is under imminent danger of serious physical injury.
28 U.S.C. § 1915(g).

29 - FINDINGS AND RECOMMENDATION

Findings and recommendation would be frivolous and not taken in good faith. Plaintiff's *in forma pauperis* status should not continue on any such appeal.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order. The parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the court. Thereafter, the parties have fourteen (14) days within which to file a response to the objections. Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.

DATED this 13 day of March, 2012,

Thomas M. Coffin
United States Magistrate Judge